STATE v. ALEXANDER SHAFT.

*Hiring out Convicts—Hiring to Wife.*

Under the provisions of Ch. 196, Laws 1876–'7, the Commissioners of a County have the power to hire out a man imprisoned in the County jail upon a conviction for fornication and adultery, to his wife, upon her giving bond with sureties for the price.

(SMITH C. J. *Dissenting.*)

MOTION to Remand the defendant to Jail, heard at Fall Term, 1877, of BUNCOMBE Superior Court, before *Schenck, J.*

At Spring Term, 1877, of said Court, the defendant was convicted of fornication and adultery, and sentenced by Judge Furches to imprisonment for six months in the County jail. After the defendant had been in prison about two months, the County Commissioners hired him to his wife, (under Laws 1876–'77, ch. 196), who, with her husband and two sureties, entered into a contract with the Commissioners to pay $5 per month for the unexpired term of said imprisonment. The defendant was thereupon released, being required by the contract only to return to the jail at night. Whereupon the Solicitor moved to remand him to jail, and His Honor, being of opinion that the effect of the contract was an evasion of the law and a prevention of the *bona fide* execution of the sentence, allowed the motion and ordered the defendant to be imprisoned for the balance of said term. From this order the defendant appealed, and was allowed to give bond for his appearance at the next term of said Court.

*Attorney General*, for the State.
No counsel for the defendant.

RODMAN, J. As this is the first case under Chapter 196, of

the Acts of 1876–'7, we have carefully considered it. The Act makes an important change in the treatment of convicts sentenced to imprisonment in the County jails. It authorizes the County Commissioners *or* such other County authorities therein as may be established by law, *and also* the Mayor &c., of cities and towns, under such rules and regulations as they may deem best, to provide for the employment of such convicts on the public streets and highways, on public works, " or other labor for *individuals* or corporations;" provided that they shall not be detained longer than the term for which they are sentenced, and that the sums realized from hiring them out shall be applied to pay the fines and costs.

We need not notice the provisions in the subsequent sections of the Act. It will occur at once that the Act is not clear as to who shall make the regulations, and says nothing as to what is to be done in case the County Commissioners, and the other County authorities whoever they may be, and the Mayor &c., make different regulations. No question upon that however arises in this case, for here, the County Commissioners alone have acted.

At Spring Term, 1877, of Buncombe Superior Court, the defendant was convicted of fornication and adultery, and sentenced to be imprisoned for six months. After having been in prison for about two months, the County Commissioners hired him out to his wife for the remaining four months of his term at $5 per month, requiring (or allowing) him to return to the jail every night. The wife gave what purports to be her bond (which the husband signs also) with two sureties, agreeing to pay the $5 per month, or at that rate for the time that Shaft might work. The proceeding seems to conform to the Act, and it is not said to be irregular, except in that he was hired to his wife. On this point it is said that her contract was void. So it was, but her sureties were bound. Again it is said, that to permit the

29

wife of a prisoner to hire him, is substantially to allow him to escape punishment. That may sometimes be so; and it may be so even when the person who hires him is not his wife. And on the other hand, if the master be a harsh one, the service may be a severer punishment than simple impris-- onment. But neither the Superior Court nor this Court can annul a hiring by the County Commissioners, because it is- suggested that the master may be, or is, either too kind or too hard. The selection of the master is confided to the Commissioners. The idea of the Attorney General is, and perhaps that of the Judge below was, that the punishment was evaded. But, *considering the nature of the defendant's crime*, it may be that the Commissioners ingeniously devised to aggravate the punishment by arming his wife in addition to the usual and acknowledged powers of a wife *in such cases*, with those of a master paying for his work, and enti- tled thereby to keep him in sight and hearing. In this view, the permission to return to the jail after sunset and remain until sunrise looks like a merciful alleviation of what would otherwise have been a cruel and unusual pun-- ishment.

The actual effect of the Act in the present case may be- taken to be, to commute imprisonment into the payment of $20 if the costs amount to so much. The Legislature may certainly do this if it thinks proper, and in many cases- where the offence is petty, the propriety of doing so would be generally conceded. But it will be as generally conceded that there are cases in which the only adequate punishment is actual imprisonment. "*In arcta et salva custodia.*" The Legislature may see fit to amend the law by leaving it to- the Judge to say in his sentence whether the prisoner may be hired out or not; or, by allowing the hiring only when the prisoner shall be in prison for non-payment of a fine.

We think that the Judge erred in undertaking to annul the action of the County Commissioners, and his order to that effect must be reversed.

STATE *v.* SHAFT.

SMITH, C. J. *Dissenting.* Not being able to concur with the other members of the Court in their construction of the Act of March, 6th 1877, as applicable to the facts of this case, I propose briefly to state the reasons for dissent.

The first section of the Act authorizes County Commissioners and the Mayor and Intendant of cities and towns in the State to provide, " under such rules and regulations as they may deem best for the employment on the public streets, public highways and public works, or other labor for individuals or corporations, of all persons imprisoned in the county jails of their respective counties, cities and towns, upon conviction of any crime or misdemeanor, or who may, be committed to jail for failure to enter into bond for keeping the peace, or for good behavior, *and who fails to pay the costs* which he is adjudged to pay, or to give good and sufficient security therefor." It further requires the moneys realized " from the hiring out of such persons " to be applied to the " fine and costs in cases of conviction. " The third section declares " that the party in whose service such convicts may be, may use the necessary means to hold and keep them in custody and to prevent their escape. "

The object of the Act is not so much to substitute outdoor remunerating labor in place of close confinement as a preferable mode of punishment, as it is to provide for the fine and costs of prosecution, and relieve the public treasury of a burden. It allows only a hiring out for such period within the limits of the sentence as will raise the necessary amount. A different construction would confer upon these officers a discretionary power by which the authority to punish by imprisonment, vested in the Courts, could be entirely neutralized and its exercise defeated. . It is obvious this effect was never intended by the General Assembly, and their purpose was only to make the labor a subsidiary punishment so far as was necessary to pay these charges. When such hiring takes place, the legal relation of master

and servant with enlarged powers to the former is created between the hirer and the person hired, with the right of personal control over the latter. It cannot be supposed that the Act contemplated such relation between the wife and the imprisoned husband, nor are any persons embraced in its general terms except such as can legally enter into the contract by which the relation is formed.

There are in my opinion insuperable obstacles to a construction which extends the provisions of the Act to the case before us:—

1. The wife by reason of the coverture has no capacity to enter into a contract with the public authorities by which the relation is created. She cannot assume the personal obligations, and consequently cannot be invested with the powers involved in the relation. Nor is the difficulty obviated by the bond with sureties, because the rights conferred over the convict are personal to the wife, and she must be capable of exercising them. The bond is a security merely for enforcing the contract.

2. The effect of such hiring of the prisoner to his wife would be to subvert the marital relation and the principle upon which domestic harmony is secured, and tend to introduce an irrepressible conflict.

3. It is forbidden by public policy, and inconsistent with the peace and good order of society.

For these and other reasons, the Act should not be interpreted to embrace the case before us; but its general terms should be understood as confined to persons who can lawfully enter into the contract, and take and exercise the authority it gives. The Judge therefore in my opinion was right in treating the transaction as evasive of the law and null; and in ordering the prisoner to serve out the unexpired residue of his term.

PER CURIAM. Order reversed.